RECORD NO. 14-1259

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

In re: Highland Construction Management Services, LP,

*Debtor*

---

## HIGHLAND CONSTRUCTION MANAGEMENT SERVICES, LP,

*Plaintiff-Appellant,*

v.

## WELLS FARGO BANK, N. A., for the use and benefit of Jerome Guyant IRA,

*Defendant-Appellee.*

---

### OPENING BRIEF OF PLAINTIFF-APPELLANT

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

James P. Campbell
CAMPBELL FLANNERY PC
One Village Plaza
1602 Village Market Boulevard
Suite 220
Leesburg, Virginia 20175-0000
(703) 771-8344 (Telephone)
jcampbell@campbellflannery.com

Counsel for Plaintiff-Appellant

---

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>14-1259</u>    Caption: <u>Highland Construction Management Services, LP v. Wells Fargo NA</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Highland Construction Management Services, LP</u>
(name of party/amicus)

_____

who is    <u>Appellant</u>   , makes the following disclosure:
     (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?     ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO
    If yes, identify all such owners:

- 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☑YES ☐NO
      If yes, identify entity and nature of interest:

      The Appellant believes Wells Fargo, NA to be a publicly held corporation.

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?   ☑YES ☐NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ James P. Campbell                    Date:    April 8, 2014

Counsel for: Appellant

## CERTIFICATE OF SERVICE
*****************************

I certify that on ___April 8, 2014___ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ James P. Campbell                               April 8, 2014
      (signature)                                      (date)

Case No. 14-1259

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT


**HIGHLAND CONSTRUCTION
MANAGEMENT SERVICES, LP**

      **Appellant,**               **Appeal from an Order
                         of the United States District Court,**
**v.**                          **Case No. 1:13-cv-01244**

**WELLS FARGO NA F/B/O
JEROME GUYANT IRA,**

      **Appellee.**


**<u>Brief of Appellant</u>**


**Petitioner:  James P. Campbell, Esquire
               VSB No. 25097
               Campbell Flannery, P.C.
               1602 Village Market Boulevard
               Suite 220
               Leesburg, Virginia 20175
               (703) 771-8344 / Telephone
               (703) 777-1485 / Facsimile
               JCampbell@campbellflannery.com**

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT
TABLE OF AUTHORITIES…………………………………………………………… ii
I.     STATEMENT OF APPELLATE JURISDICTION……………………….. 1
II.    STANDARD OF APPELLATE REVIEW……………………………… 1
III.   STATEMENT OF ISSUES PRESENTED……………………………… 1
IV.   STATEMENT OF THE CASE…………………………………………….. 1
V.    SUMMARY OF THE ARGUMENT……………………………………… 4
VI.   ARGUMENT………………………………………………………………… 6

        A.     Virginia UCC statutes are unambiguous and must
               be applied as written.  (Assignment 1)……………………………… 6

        B.     The Bankruptcy Court improperly eliminated the plain
               language of Virginia Code §8.9A-515(c).  (Assignment 1)…………. 7

        C.     Interpreting "never to have been perfected" to create
               a retrospective rule is error.  (Assignment 2)………………………... 9

        D.     "Ceases to be effective…and becomes unperfected"
               is an unambiguous bright line rule.  (Assignments 1 and 2)……….. 11

        E.     All persuasive authority emanates from the Bankruptcy
               Court in this case.  (Assignments 1 and 2)………………………… 14

VII.  CONCLUSION…………………………………………………………... 16
VIII. REQUEST FOR ORAL ARGUMENT…………………………………….. 17
CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)(i)…………….. 18
CERTIFICATE OF SERVICE…………………………………………………… 19

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Am. Bank, FSB v. Miller Bros. Lumber Co.*
*(In re Miller Bros. Lumber Co.)*
     2013 U.S. Dist. LEXIS 152176…………………………………………… 15

*Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors, Inc.*
*(In Re Dornier Aviation (N. Am.)*
     453 F.3d 225 (2006)…………………………………………………... 1

*Highland Constr. Mgmt. Servs. v. Wells Fargo, NA*
     497 B.R. 829 (E.D. Va. 2014)……………………………………… 3

*In re Chattanooga Choo-Choo Co.*
     98 B.R. 792, 8 UCC Rep.Serv.2d 795 Bankr.E.D.Tenn. (1989)……… 15, 16

*In Re Highland Constr. Mgmt. Servs.*
     2013 Bankr. LEXIS 3057, 2013 WL 3957504…………………………... 3

*In re Hurst*
     27 B.R. 740 (Bankr.E.D.Tenn. 1983)……………………………… 7

*In Re Johnson*
     960 F2d. 396 (4th Cir. 1992)…………………………………………... 1

*In re Miller Brothers Lumber Co., Inc.*
     212 Bankr. Lexis 2031, 56 Bankr. Ct. Dec. 128,
     2012 WL 1601316 (Bankr.M.D.N.C. 2012)……………………… 14

*In re Waynesboro Motor Co.*
     60 F.2d 668 (S.D.Miss. 1932)……………………………………… 7

*In re Wilkinson*
     212 Bankr. Lexis 1539
     2012 WL 119278077
     UCC Rep.Serv. 2d 363 Bankr. N.D.N.Y. (April 10, 2012)…………... 15, 16

*Mosteller v. CitiCapital Commercial Corp*. (*In Re Stetson & Associates, Inc.*)
    330 B.R. 613 (Bankr. E.D. Tenn. 2005)…………………………………... 15

*United States v. Central Livestock Corp*.
    616 F. Supp. 629 (D. Kan. 1985)…………………………………………… 10

*United States v. Bailey Feed Mill, Inc*.
    592 F. Supp. 844 (E.D.N.C. 1984)………………………………………... 10

*United States v. Currituck Grain*
    6 F.3d 200 (1993)………………………………………………………... 9, 10, 11

*United States v. Hansen*
    678 F. Supp. 254 (D. Utah 1988)………………………………………… 10

*United States v. Squires*
    378 F. Supp. 798 (S.D. Iowa 1974)……………………………………….. 10


State Cases

*Abbott v. Willey*
    253 Va. 88, 91, 479 S.E.2d 528 (1997)…………………………………….. 8

*Ainslie v. Inman*
    265 Va. 347, 577 S.E.2d 246 (2003)……………………………………….. 2

*Anderson v. Commonwealth*
    182 Va. 560, 29 S.E. 2d 838 (1944)……………………………………… 11

*Barr v. Town & Country Properties, Inc.*
    240 Va. 292, 396 S.E.2d 672 (1990)……………………………… 8, 9, 11

*Brown v. Lukhard*
    229 Va. 316, 330 S.E.2d 84 (1985)……………………………………… 8

*City of Virginia Beach v. Flippen*
    251 Va. 358, 467 S.E.2d 471 (1996)……………………………………… 12

*Growth Properties v. Lempert*
 144 Cal. App. 3d 983, 193 Cal. Rptr. 102 (1st Dist. 1983)……………….. 10

*Hanley Implement Co., Inc. v. Riesterer Equipment*, Inc.
 150 Wis. 2d 161, 441 N.W.2d 304 (Wis. Ct. App. 1989)………………… 10

*Harrison & Bates, Inc. v. Featherstone Assocs.*
 253 Va. 364, 484 S.E.2d 883 (1997)……………………………………….. 8

*Hubbard v. Henrico Ltd. Pshp.*
 255 Va. 335, 497 S.E.2d. 335 (1998)………………………………... 8, 11

*Marsh v. City of Richmond*
 234 Va. 4, 360 S.E.2d 163 (1987)…………………………………… 12

*Raven Red Ash Coal Corp. v. Absher*
 153 Va. 332, 149 S.E. 541 (1929)…………………………………… 13

*Sims Wholesale Co. v. Brown-Forman Corp*.
 251 Va. 398, 468 S.E.2d 905 (1996)……………………………… 13

*Weinberg v. Given*
 252 Va. 221, 476 S.E.2d 502 (1996)……………………………….. 9

<u>Federal Codes</u>

11 U.S.C. §544……………………………………………………… 7

11 U.S.C. §362……………………………………………………... 5, 11

28 U.S.C. §158(d)(1)………………………………………………… 1

<u>State Code</u>

Virginia Code §8.9A–515(c)……………………………………….. passim

Virginia Code §8.9-403……………………………………………… 4, 5

Virginia Code §55-243……………………………………………... 8, 13

v

## I.     STATEMENT OF APPELLATE JURISDICTION

Jurisdiction is proper pursuant to 28 USC Section 158(d)(1).

## II.     STANDARD OF APPELLATE REVIEW

The issues presented are pure matters of law and are reviewable de novo.  *In Re Johnson,* 960 F2d. 396, 399 (4th. Cir. 1992); *Fairchild Dornier GmbH v. Official Comm. of Unsecured Creditors (In Re Dornier Aviation (N. Am.), Inc.)* 453 F.3d 225 (2006).

## III.     STATEMENT OF ISSUES PRESENTED

1.     As a matter of law, and as a matter of first impression, did the District Court err in affirming the Bankruptcy Court's conclusion that a UCC financing statement which "ceased to be effective" and "becomes unperfected" continued to be effective and perfected, notwithstanding the plain language of Virginia Code §8.9A–515(c)?

2.     As a matter of law, and as a matter of first impression, did the District Court err in affirming the Bankruptcy Court's conclusion that §8.9A- 515(c) is ambiguous?

## IV.     STATEMENT OF THE CASE

Highland Construction Management Services, LP ("Debtor") filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code on February 28, 2011.  On July 5, 2011, Wells Fargo f/b/o Jerome Guyant IRA

1

("Guyant IRA"), by counsel, filed Proof of Claim 4-1 ("Claim") in the amount of $1,396,657.52, which included a principal loan of $1,082,000.00, plus interest, attorney's fees and expert witness fees.

The loan was secured on October 11, 2006 by the filing of a UCC Financing Statement with the Virginia State Corporation Commission. See JA10. Jerome Guyant IRA filed a first UCC Financing Statement Amendment ("UCC Amendment 1") with the Virginia State Corporation Commission on January 18, 2007. See JA12.

On February 1, 2010, Guyant IRA filed a second UCC Financing Statement Amendment ("UCC Amendment 2") with the Virginia State Corporation Commission. See JA11.

On March 3, 2010, Guyant IRA filed a Complaint in the Circuit Court of Loudoun County, Virginia against the Debtor. See JA13-24. The Complaint did not seek, and the Circuit Court did not address, actual enforcement of the security instrument created by the UCC and UCC amendments. Further, no charging order was requested in relation to the collateral identified in UCC Amendment 2. Under Virginia law, the Declaratory Judgment did not constitute an enforcement action of the UCC. *See Ainslie v. Inman*, 265 Va. 347, 577 S.E.2d 246 (2003).

Guyant IRA did not file a continuation statement prior to its expiration date. The financing statement lapsed on October 10, 2011 as a matter of law.

Debtor objected to Guyant IRA's claim on October 23, 2012 on the basis that it no longer possessed a perfected security interest, because the Financing Statement lapsed on October 20, 2011 and, as a result, Guyant IRA's interest was subordinated to that of the Trustee's, or that of the Debtor in possession.

Guyant IRA argued that the Official Comments to §8.9A-515(c) (the statute explaining the effect of a lapsed financing statement) show that even if a lapse in financing statement renders the interest unperfected, it retains a "perfected" interest and has priority over any party who is not a purchaser for value, including a trustee or a debtor in possession.

The Bankruptcy Court initially ruled in the Debtor's favor, and disallowed the claim on March 29, 2013. See Memorandum Opinion, JA174-182. *In Re Highland Constr. Mgmt. Servs.*, 2013 Bankr. LEXIS 1264 (E.D. Va. Bk. 2013).

Guyant IRA filed a Motion for Reconsideration, which the Bankruptcy Court granted on July 30, 2013. In its Opinion of July 30, 2013 ("Reconsideration Memorandum"), JA205-226; *Highland Constr. Mgmt. Servs. v. Wells Fargo, NA*, 497 B.R. 829 (E.D. Va. 2014) the Court reversed its prior holding that the statutes were unambiguous and should be applied as written. At reconsideration the Bankruptcy Court held that Virginia Code §8.9A-515(c) is ambiguous and looked to the Official Comments for clarification, then determined that the Official

3

Comments supported the conclusion that a lapsed financing statement would only affect priorities prospectively, and would remain perfected retrospectively.

The District Court did not address the asserted ambiguity of §8.9A–515(c) but nevertheless relied upon the Official Comments to the UCC, which the District Court asserted to be consistent with the "plain language of the statute…":

> Under Va. Code §8.9A-515(c), a secured creditor whose security interest becomes unperfected by lapse of a financing statement following the filing of a bankruptcy petition nevertheless retains priority over the hypothetical lien creditor status afforded to a bankruptcy trustee or debtor-in-possession.  The plain language of the statute is corroborated by the Official Comments to the UCC, which explicitly state: "The deemed retroactive unperfection…does not apply with respect to lien creditors." A security interest that becomes unperfected as a result of the lapse of a financing statement is retroactively subordinated only as against a purchaser of the collateral for value, and not as to lien creditors.  Lien creditors do no benefit from the last sentence in Va. Code §8.9A-515(c); the last sentence speaks only to purchasers for value.  See District Court Order, JA232-234.

On March 23, 2014 the Debtor timely noted an appeal to this Court.

## V.    SUMMARY OF THE ARGUMENT

Prior to the 2001 amendments to the Virginia Uniform Commercial Code, Virginia Code §8.9-403 provided that liens in effect on the date of the filing of a bankruptcy petition continued throughout the pendency of a bankruptcy case.

In 2001 Virginia Code §8.9-403 was repealed by Acts 2000, c. 1007, effective July 1, 2001 and was re-codified as Va.Code (1950) §8.9A-515. This was a deliberate change.

4

Prior to the 2001 amendment, the filing of a continuation statement after a bankruptcy case was commenced violated the automatic stay. 11 U.S.C. §362(a). In 1994, Congress amended §362 by making explicit that the automatic stay did not apply to acts to continue the perfection of an interest in property. 11U.S.C. §362(b)(3).

Section §8.9-403 had its own unfortunate consequences. The Uniform Commercial Code permitted the state office where financing statements were filed to destroy them five years after they were filed, the time when they would ordinarily lapse if not continued.

In the bankruptcy proceeding Guyant IRA asserted itself to be a secured creditor based upon a UCC filing. On October 10, 2011, a little more than seven months after the filing of the bankruptcy petition, the Guyant UCC financing statement lapsed.

On March 29, 2013 the Bankruptcy Court agreed that the 2001 Amendments created a bright line rule, and declared that the Guyant IRA was no longer a secured creditor by virtue of the UCC lapse on October 10, 2011.

On July 30, 2013 the Bankruptcy Court reconsidered its earlier position and adopted a "retrospective and prospective imperfection theory" based upon an alleged ambiguity in Virginia Code §8.9(A)-515(c):

Revised Article 9 is somewhat opaque. It assumes that once a security

5

> interest is perfected it remains perfected as to existing secured parties and lien creditors, that is, its retrospective effectiveness continues. The last sentence alters this result as to secured parties but not lien creditors or trustees in bankruptcy. In any event, the lapsed financing statement has no prospective effectiveness. **There is nothing in Va.Code (1950) §8.9A-515(c) that says this expressly**, but the last sentence has no meaning without that understanding. Reconsideration Memorandum JA224-225 – Emphasis added.

However by inserting an "understanding" not expressly provided for in the statute, the Bankruptcy Court judicially created a meaning that improperly eliminated the meaning in the first two sentences of §8.9A-515(c), specifically that a financing statement "ceases to be effective and...becomes unperfected."  This was error as a matter of statutory construction pursuant to Virginia law.

## VI.    ARGUMENT

### A.    Virginia UCC statutes are unambiguous and must be applied as written.  (Assignment 1)

The Uniform Commercial Code's priority scheme is a creature of state law. Perfected interests and priorities arise under and are interpreted solely pursuant to state law.  The statutory provision at the center of this appeal is Va. Code Section 8.9(A)-515(c):

> *(c) Lapse and continuation of financing statement.*  The **effectiveness of a filed financing statement lapses on the expiration of the period** of its effectiveness.  **Upon lapse, a financing statement ceases to be effective and** any security interest or agricultural lien that was perfected by the financing statement **becomes unperfected**, unless the security interest is perfected otherwise.  If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against

a purchaser for collateral for value.  Va.Code (1950) §8.9A-515(c).
Emphasis added.

Section 544 of the Bankruptcy Code perfects the Trustee's rights and the rights of a debtor-in-possession on the date of the filing of the petition.  As a hypothetical judgment lien creditor, the bankruptcy trustee is entitled to priority over unperfected liens.  The status that §544 confers is that of the "ideal creditor, irreproachable, and without notice, armed cap-a-pie with every right and power which is conferred by the law of the state upon its most favored creditor who has acquired lien by legal or equitable proceedings;" thus a "trustee is empowered with the right of judicial lien creditor, creditor holding execution returned unsatisfied, and bona fide purchaser of real property from the debtor."  *In re Hurst*, 27 B.R. 740 (Bankr.E.D.Tenn. 1983)(quoting *In re Waynesboro Motor Co*., 60 F.2d 668, 669 (S.D.Miss. 1932).

**B.    The Bankruptcy Court improperly eliminated the plain language of Virginia Code §8.9A-515(c).  (Assignment 1)**

The essence of the error below is that the District Court's affirmed the Bankruptcy Court's conclusion, in its Reconsideration Memorandum, that the third sentence of §8.9A–515(c) must be read in such a fashion as to eliminate <u>entirely</u> the <u>plain language</u> of the first two sentences §8.9A-515(c).  Review of the first two sentences is necessary for this analysis:

7

(c) Lapse and continuation of financing statement.  The **effectiveness of a filed financing statement lapses on the expiration of the period** of its effectiveness.  **Upon lapse, a financing statement ceases to be effective and** any security interest or agricultural lien that was perfected by the financing statement **becomes unperfected**, unless the security interest is perfected otherwise.  Emphasis added.

Neither the District Court nor the Bankruptcy Court explained how the words "**upon lapse, a financing statement ceases to be effective" and…becomes unperfected"** can properly be eliminated from the interpretation of the statute by reference to comments and notes.  Nevertheless, this is precisely what the District Court did by affirming an interpretation of §8.9A – 515(c) that concludes that the financing statement does not, in fact, "cease to be effective." This conclusion cannot be reconciled with the first two sentences of the section nor with the clear mandate of Virginia law on the issue of statutory construction in *Hubbard v. Henrico Ltd. Pshp.*, 255 Va. 335 (1998).

In *Hubbard* the Virginia Supreme Court enforced legislative intent that unlawful detainer proceedings "shall cease" upon a timely tender by the tenant of the delinquent amounts due:

We repeatedly have stated the principles of statutory construction that apply when a statute, such as Code § 55-243, is clear and unambiguous. In such circumstances, **a court may look only to the words of the statute to determine its meaning**. *Harrison & Bates, Inc. v. Featherstone Assocs.*, 253 Va. 364, 368, 484 S.E.2d 883, 885 (1997)*; Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). The **intention** of the legislature **must be determined from those words, unless** a literal **construction** would **result in a manifest absurdity**. *Abbott v. Willey*, 253 Va. 88, 91, 479 S.E.2d 528, 530 (1997); *Barr v. Town & Country Properties, Inc.*, 240 Va. 292, 295, 396

S.E.2d 672, 674 (1990). Thus, when the legislature has used words of a clear and definite meaning, the **courts cannot place** them **a construction that** amounts to holding that **the legislature did not intend what it actually has expressed**. *Id.*; *Weinberg v. Given*, 252 Va. 221, 225-26, 476 S.E.2d 502, 504 (1996). At 339. Emphasis added.

The Debtor does not concede that the "deemed never to have been perfected" language is ambiguous in any respect. However, if that language is ambiguous the Bankruptcy Court and the District Court were not empowered to interpret the ambiguous language to eliminate the meaning of the plain language declaring that a financing statement ceases to be effective and becomes unperfected upon lapse. This province is reserved to the General Assembly in Virginia.

**C.     Interpreting "never to have been perfected" to create a retrospective rule is error. (Assignment 2)**

In *United States v. Currituck Grain*, 6 F.3d 200 (1993) this Court addressed the issue of a lapsed UCC financing statement in the context of a case for conversion of grain. *Currituck*, decided before the 1999 amendments, explains a reason for the "deemed never to have been perfected" language relating to "purchasers of collateral for value." In *Currituck* the FHA brought a claim for conversion against a purchaser of grain that was subject to a UCC. At the time of the claim the UCC financing statement had lapsed. The sale of grain occurred prior to the lapse.

This Court noted that the UCC at the time did not provide clear guidance:

9

However, our inquiry under the UCC cannot stop here, as none of the foregoing provisions determines the relative priorities of Currituck and the FmHA in the collateral following the lapse and relating back of the FmHA's unperfected security interest. *Id.* at 204.

Based upon common law this Court determined that a party claiming conversion must have a perfected security interest at the time of the conversion and at the time of the claim:

> Though the case law on the point is sparse, every published decision which has come to our attention has held that the relating back and subordination of an unperfected security interest under UCC §§ 9-403(2) and 9-301(1) prevents that secured party from maintaining an action in conversion against later-in-time purchasers of the collateral. This is so even though in some sense the secured party's cause of action accrued for some period of time prior to the lapse of time required. See *United States v. Hansen*, 678 F. Supp. 254 (D. Utah 1988); *United States v. Central Livestock Corp.*, 616 F. Supp. 629 (D. Kan. 1985); *United States v. Bailey Feed Mill, Inc.*, 592 F. Supp. 844 (E.D.N.C. 1984) (addressing N.C. GEN. STAT. §4469.1); *United States v. Squires*, 378 F. Supp. 798 (S.D. Iowa 1974); *Hanley Implement Co., Inc. v. Riesterer Equipment*, Inc., 150 Wis. 2d 161, 441 N.W.2d 304 (Wis. Ct. App. 1989); *Growth Properties v. Lempert*, 144 Cal. App. 3d 983, 193 Cal. Rptr. 102 (1st Dist. 1983).

From a reading of *Currituck* it is apparent that the legislative modification in 1999, creating the "deemed never to have been perfected as against a purchaser of collateral for value" language resolved an uncertainty. Specifically, the amendment made it clear that the UCC would not support conversion claims against purchasers for value, after lapse of a UCC financing statement.

The Bankruptcy Court concluded the last sentence of §8.9A-515(c) would have no meaning without the "retrospective/prospective imperfection" rule which

the Bankruptcy Court adopted.  Reference to *Currituck* is but one example of how the language in §8.9A-515(c) can be interpreted in a way that is not manifestly absurd, and which maintains the clear meaning of the first two sentences.  Rather than harmonize the two provisions, the Bankruptcy Court developed a construction that resulted in the impermissible rewriting of §8.9A-515(c), "an act for which courts are not permitted to engage…" as a matter of Virginia law.  *Hubbard*, 255 Va. at 340; See also *Barr v. Town & Country Properties, Inc.*, 240 Va. at 295, 396 S.E.2d at 674 (1990); *Anderson v. Commonwealth*, 182 Va. 560, 566, 29 S.E. 2d 838, 841 (1944).

The Bankruptcy Court and the District Court created broader meaning for language that is not ambiguous particularly when applied to conversion claims such as in *Currituck*.  If the General Assembly had intended to create a distinction between prospective and retrospective perfection and unperfection, they would not have created a clear and simple test declaring that lapsed financing statements cease to be effective and become unperfected.

**D.    "Ceases to be effective…and becomes unperfected" is an unambiguous bright line rule.  (Assignments 1 and 2)**

As noted by the Bankruptcy Court in its First Memorandum, the 2001 amendments to the UCC eliminated the state law bankruptcy "freeze" after Congress amended 11 U.S.C. Section 362(b) to allow filing of continuation statements without violating the automatic stay. This change solved a problem:

The Uniform Commercial Code permitted the state office where financing statements were filed to destroy them five years after they were filed, the time when they would ordinarily lapse if not continued. Under the pre-2001 law, the old financing statements were destroyed. However, the financing statement continued to be effective under the Virginia Code while a debtor was in bankruptcy. A subsequent search of the financing statements would not reveal the financing statement because the original financing statement was destroyed and no continuation statement was filed. The amendments to the Bankruptcy Code and to the Uniform Commercial Code resolved the issues. *First Memorandum Opinion, March 29, 2013, JA177.*

In the Reconsideration Memorandum the Bankruptcy Court explained the reason for 2001 UCC Amendments, which were easily harmonized with all three sentences of §8.9 A − 515(c). The error of the Reconsideration Memorandum is evident because it eliminates the plain directive in the second sentence of §8.9 A − 515(c) that upon lapse a UCC instrument **"ceases to be effective…and becomes unperfected."** This can only mean that upon lapse, a UCC filing no longer secures anything.

The paucity of cases around the country on this issue confirms that the bright line rule works. This being an issue of state law it is important to be reminded that *Hubbard* stands for the proposition that a court may not interpret a statute in such a fashion as to eliminate a clearly expressed intention of the legislature:

When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to **infer** the legislature's intent **from** the **plain** meaning of the **language** used. *City of Virginia Beach v. Flippen*, 251 Va. 358, 362, 467 S.E.2d 471, 473-74 (1996); *Marsh v. City of Richmond*, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987).

***

Hubbard's interpretation of Code § 55-243 **would require us to render meaningless** the statutory language which provides that an unlawful detainer action "**shall cease**" on the tenant's tender to the landlord of the overdue rent and related charges. Such an interpretation would violate the settled principle of statutory construction that every part of a statute is presumed to have some effect and **no part will be considered meaningless unless absolutely necessary**. *Sims Wholesale Co. v. Brown-Forman Corp*., 251 Va. 398, 405, 468 S.E.2d 905, 909 (1996); *Raven Red Ash Coal Corp. v. Absher*, 153 Va. 332, 335, 149 S.E. 541, 542 (1929) at 340. Emphasis added.

If the phrase "shall cease" is unambiguous so are the phrases "ceases to be effective" and "becomes unperfected." The Reconsideration Memorandum rendered the first two sentences of 515(c) meaningless. This clearly was error.

The Bankruptcy Court acknowledged in both Opinions that the first two sentences of §8.9A-515(c) are clear and unambiguous:

The plain meaning of the statutes should be given effect in the absence of countervailing considerations. Here, the Bankruptcy Code was amended to make clear that filing a continuation statement did not violate the automatic stay. The Uniform Commercial Code was the revised − and enacted in Virginia − to eliminate the tolling period for the lapse of financing statements.

The intent of both Congress and the General Assembly are clear. The statutes provide a plain remedy to an unfortunate situation, making the prior equitable remedy unnecessary. There is no other provision in the Bankruptcy Code that preserves a financing statement in these circumstances. The statute should be given effect as written. *First Memorandum Opinion, March 29, 2013, JA178-179.*

***

The prospective rule is plainly set out in the second sentence of Virginia Code (1950) Section 8.9A-515(c). Upon lapse, a financing statement ceases to be effective and any security interest… That was perfected by the

13

financing statement becomes unperfected.  This is the commonsense answer. *Reconsideration Memorandum, JA211.*

Because the General Assembly clearly stated a directive that the "effectiveness of a filed financing statement lapses upon the expiration of the period of its effectiveness" the "commonsense answer" is that such an instrument no longer has **any effect**.  This can only mean that the day after the lapse of a UCC instrument, no lien exists. That was the conclusion of the Bankruptcy Court in its First Memorandum Opinion, which was correct and consistent with *Hubbard* and the plain language of §8.9A-515(c).

The "retroactive unperfection theory", based on the alleged ambiguity in the third sentence of §8.9A-515(c) cannot be reconciled with "ceases to be effective" and "becomes unperfected."  The UCC instrument securing the Guyant IRA ceased to be effective on the fifth anniversary of the initial filing, and was and is of no further effect after October 11, 2011.

### E.    All persuasive authority emanates from the Bankruptcy Court in this case.  (Assignments 1 and 2)

When the Bankruptcy Court initially ruled in the Debtor's favor, and disallowed the claim on March 29, 2013, it agreed with the Bankruptcy Court for the Middle District of North Carolina*, In re Miller Brothers Lumber Co., Inc.,* 212 Bankr. Lexis 2031, 56 Bankr. Ct. Dec. 128, 2012 WL 1601316, (Bankr.M.D.N.C. 2012).  The Bankruptcy Court in *Miller Brothers* held that the debtor moved up to

14

first lien position upon lapse of a perfected financing statement.  The essence of
*Millers Brothers* was that the plain language of the 2002 Amendments to the UCC
in North Carolina unequivocally required continuation statements, even for debtors
in bankruptcy.

 After the Reconsideration Decision at issue in this appeal, *Am. Bank, FSB v.
Miller Bros. Lumber Co. (In re Miller Bros. Lumber Co.)*, 2013 U.S. Dist. LEXIS
152176 was decided on October 23, 2013 in the United States District Court for the
Middle District of North Carolina.  The North Carolina District Court reversed the
Bankruptcy Court and applied the methodology employed in the Reconsideration
Memorandum.

 In addition to *In re Miller Bros. Lumber Co.,* the Bankruptcy Court
considered *Mosteller v. CitiCapital Commercial Corp*. (*In re Stetson & Assoc.,
Inc.*), 330 B.R. 613, 619-620 Bankr.E.D.Tenn. (2005); *In re Wilkinson*, 212 Bankr.
Lexis 1539; 2012 WL 1192780, 77 UCC Rep.Serv. 2d 363 Bankr. N.D.N.Y. (April
10, 2012); and *In re Chattanooga Choo-Choo Co.*, 98 B.R. 792, 8 UCC
Rep.Serv.2d 795 Bankr.E.D.Tenn. (1989). None of these cases addresses the
precise issue in this case but a brief review is appropriate.

 *Mostoller* addresses Amendments to the UCC in 2001 related to multistate
filings.  In *Mostoller*, the Tennessee Bankruptcy Court mentioned the new lapse
provisions, but decided the case on the basis of the bankruptcy freeze.

*Wilkinson* likewise provides little, if any, guidance.  Like *Mostoller*,

*Wilkinson* was not decided on the basis of state law but on the basis of an asserted

bankruptcy freeze.  Neither the Bankruptcy Court nor the Eastern District in this

case were persuaded by the bankruptcy freeze argument.

The Bankruptcy Court also cited *In re Chattanooga Choo-Choo Co.* which

was decided in 1989 and dealt with priorities of competing financing statements.

In *Chattanooga Choo-Choo Co* the Tennessee Bankruptcy Court concluded that a

lapsed financial statement became retrospectively unperfected.  *Chattanooga*

*Choo-Choo Co.* has no application to the facts at hand as this case was clearly

decided before the UCC Amendments that became effective in 2001.

## VII.   CONCLUSION

The Bankruptcy Court's July 30, 2013 Memorandum Opinion begins with

the following rhetorical question:

> When is a financing statement that is no longer effective, still
> effective?   When it lapses, of course!

In the Memorandum Opinion the United States Bankruptcy Court for the

Eastern District of Virginia thoroughly examined a methodology, by stating over

twenty-two pages, the reasons why the plain language of Virginia Code §8.9A–

515(c) cannot mean what it plainly states.  This is a province reserved to the

General Assembly.   As a matter of Virginia law, eliminating meaning to plain

language is error.  Highland Construction Management Services, LP respectfully

16

requests this Appeal be granted and that this Court provide guidance pursuant to

Virginia law regarding the bright line rule established by the first two sentences of

§8.9A–515(c).

## VIII. REQUEST FOR ORAL ARGUMENT

Counsel for Appellant desires to state orally and in person to this Court the

reasons why the United States District Court should be reversed.

Respectfully submitted,

**HIGHLAND CONSTRUCTION
MANAGEMENT SERVICES, LP**

_____/s/ *James P. Campbell*_____
James P. Campbell, Esq.
VSB No. 25097
Campbell Flannery, PC
1602 Village Market Boulevard
Suite 220
Leesburg, Virginia 20175
703-771-8344/Telephone
703-777-1485 Facsimile

17

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)(i)**

The length of foregoing opening brief, excluding Corporate Disclosure

Statement, Table of Contents, Table of Authorities, Request for Oral Argument,

Certificate of Compliance and Certificate of Service is 19 pages, 4,009 words.


_____ /s/ *James P. Campbell* _____
James P. Campbell, Esq.
VSB No. 25097
Campbell Flannery, PC
1602 Village Market Boulevard
Suite 220
Leesburg, Virginia 20175
703-771-8344/Telephone
703-777-1485 Facsimile

## CERTIFICATE OF SERVICE

I certify that on the 5th day of May, 2014 the foregoing document was

served on all parties or their counsel of record through the CM/ECF system and by

serving a true and correct copy at the addresses listed below:

> Neil D. Goldman, Esq.
> Goldman & Van Beek, PC
> 510 King Street, Suite 416
> Alexandria VA 22314
> (703) 684-3260 /Telephone
> (703) 548-4742/Facsimile
> ngoldman@goldmanvanbeek.com


> _____/s/ *James P. Campbell*_____
> James P. Campbell, Esq.
> VSB No. 25097
> Campbell Flannery, PC
> 1602 Village Market Boulevard
> Suite 220
> Leesburg, Virginia 20175
> 703-771-8344/Telephone
> 703-777-1485 Facsimile