Case No. 14-1259

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

**In re: Highland Construction Management Services, LP,**

*Debtor*

---

# HIGHLAND CONSTRUCTION MANAGEMENT SERVICES, LP,

*Plaintiff-Appellant,*

v.

# WELLS FARGO BANK, N.A.,
# f/b/o JEROME GUYANT IRA,

*Defendant-Appellee.*

<u>RESPONSE BRIEF OF DEFENDANT–APPELLEE</u>

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA**

Neil D. Goldman
Goldman & Van Beek, P.C.
510 King Street, Suite 416
Alexandria, Virginia 22314
(703) 684-3260
ngoldman@goldmanvanbeek.com

Counsel for Defendant-Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1259          Caption: In re Highland Construction Management Services, LP

Pursuant to FRAP 26.1 and Local Rule 26.1,

Wells Fargo, NA f/b/o Jerome Guyant IRA
(name of party/amicus)

who is _____ Appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.    Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
       Wells Fargo & Company

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:

Judy A. Robbins, Office of the U.S. Trustee, Region 4, represented by: Michael Tully Driscoll;
Joseph A. Guzinski; Bradley David Jones.

Signature: s/ Neil D. Goldman                    Date:    April 11, 2014

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************
I certify that on    April 11, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

s/ Neil D. Goldman                                        April 11, 2014
(signature)                                                        (date)

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION...................................................................... 1

STATEMENT OF ISSUES................................................................................... 1

STATEMENT OF THE CASE ............................................................................. 2

STATEMENT OF FACTS ................................................................................... 5

SUMMARY OF THE ARGUMENT ................................................................... 6

I.    SECTION 9-515 OF THE UNIFORM COMMERCIAL CODE PROVIDES THAT A PARTY WHO HOLDS A PERFECTED SECURITY INTEREST AT THE TIME A JUDGMENT CREDITOR ACQUIRES A LIEN IN THE COLLATERAL RETAINS PRIORITY OVER THAT LIEN CREDITOR DESPITE THE LATER LAPSE OF THE SECURED PARTY'S FINANCING STATEMENT......................................................................... 6

II.   THE PRIORITIES OF PARTIES HOLDING LIEN INTERESTS IN PROPERTY OF A BANKRUPTCY DEBTOR ARE FROZEN AT THE TIME THE DEBTOR FILES ITS PETITION IN BANKRUPTCY. ............. 9

ARGUMENT .................................................................................................... 11

I.    STANDARD OF REVIEW.......................................................................... 11

II.   SECTION 9-515 OF THE UNIFORM COMMERCIAL CODE PROVIDES THAT A PARTY WHO HOLDS A PERFECTED SECURITY INTEREST AT THE TIME A JUDGMENT CREDITOR ACQUIRES A LIEN IN THE COLLATERAL RETAINS PRIORITY OVER THAT LIEN CREDITOR DESPITE THE LATER LAPSE OF THE SECURED PARTY'S FINANCING STATEMENT......................................................................... 11

A. Under the plain language of UCC § 9-515(c), a security interest that lapses in perfection is retroactively deemed never to have been perfected only as against purchasers of the collateral for value. ............................................... 12

i

B. The Official Comments to UCC § 9-515 make clear that a security interest that becomes unperfected due to lapse of a financing statement is not "deemed never to have been perfected" as against judicial lien creditors. .. 16

C. Debtor's position that a security interest that becomes unperfected due to lapse of a financing statement is deemed never to have been perfected as against a judicial lien creditor is contrary to clear legislative intent. ........... 17

D. The three cases that have considered this point of law uniformly support the Guyant IRA's position. ................................................................. 19

E. Legal commentary analyzing this precise point of law, written at the time UCC § 9-515 was drafted, reaches the same conclusion as the Bankruptcy Court and the District Court. .......................................................... 21

III. THE PRIORITIES OF PARTIES HOLDING LIEN INTERESTS IN PROPERTY OF A BANKRUPTCY DEBTOR ARE FROZEN AT THE TIME THE DEBTOR FILES ITS PETITION IN BANKRUPTCY. .......... 23

CONCLUSION ................................................................................ 24

RULE 34(a) STATEMENT WITH RESPECT TO ORAL ARGUMENT ............ 26

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .................................... 27

CERTIFICATE OF SERVICE ............................................................ 28

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

<u>Am. Bank, FSB v. Miller Bros. Lumber Co., Inc. (In re Miller Bros. Lumber</u>
<u>Co., Inc.)</u>, 2013 U.S. Dist. Lexis 152176 (M.D.N.C. 2013) ............... 8, 14, 19, 21

<u>Buettner v. R.W. Martin & Sons</u>, 47 F.3d 116 (4th Cir. 1996) ............................. 17

<u>Butner v. United States</u>, 440 U.S. 48 (1979) ................................................ 11

<u>Cape Henry Towers, Inc. v. National Gypsum Co.</u>, 229 Va. 596 (1985)............... 18

<u>Catlin v. United States</u>, 324 U.S. 229 (1945)........................................................ 1

<u>Girard Trust Co. v. Strickler (In re Varney Wood Prods., Inc.)</u>,
458 F.2d 435 (4th Cir. 1972)................................................................. 17

<u>Highland Construction Management Services, LP, v. Wells Fargo NA</u>
<u>f/b/o Jerome Guyant IRA</u>, Case No. 1:13-cv-1244 (E.D. Va. 2014)..................... 4

<u>Hubbard v. Henrico Ltd. Pshp.</u>, 255 Va. 335 (1998)................................................ 15

<u>In re Colony Beach and Tennis Club, Inc.</u>, 2014 Bankr. Lexis 1106
(Bankr. M.D. Fla. 2014)............................................................... 9, 15, 20

<u>In re Highland Construction Management Services, LP</u>,
Case No. 11-11413-RGM, 497 B.R. 829 (Bankr. E.D. Va. 2013) ................. 2, 21

<u>In re Miller Bros. Lumber Co.</u>, 2012 Bankr. LEXIS 2031
(Bankr. M.D.N.C. 2012) ........................................................... 8, 14, 20

<u>In re Wilkinson</u>, 212 Bankr. Lexis 1539 (Bankr. N.D.N.Y. 2012)............. 10, 23, 24

<u>Mostoller v. CitiCapital Commer. Corp. (In re Stetson & Assocs.)</u>,
330 B.R. 613 (Bankr. E.D. Tenn. 2005) ............................................. 19

<u>Sussex Community Servs. Ass'n v. Virginia Soc'y for Mentally</u>
<u>Retarded Children</u>, 251 Va. 240 (1996)............................................... 18

<u>Tabler v. Board of Supervisors</u>, 221 Va. 200 (1980)............................................ 18

<u>Turner v. Commonwealth</u>, 226 Va. 456 (1983)................................................. 17

<u>United States v. Han</u>, 74 F.3d 537 (4th Cir. 1996) ................................................... 11

<u>Wells Fargo Fin. Acceptance v. Price (In re Price)</u>, 562 F.3d 618

  (4th Cir. 2009) ......................................................................................... 11, 17

## **Statutes**

11 U.S.C. § 1101 ........................................................................................... 6

11 U.S.C. § 1107 ........................................................................................... 6

11 U.S.C. § 544 ........................................................................................ 6, 11

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1334 ........................................................................................... 1

28 U.S.C. § 151 ............................................................................................. 1

28 U.S.C. § 158 ............................................................................................. 1

U.C.C. § 9-203(a) (2001) ............................................................................. 14

U.C.C. § 9-308(a) (2001) ............................................................................. 14

U.C.C. § 9-515 (2001)......................................................................... *passim*

U.C.C. § 9-515, Official Comment 3 (2001) .................................... 7, 16, 17

U.C.C. § 9-515, Official Comment 4 (2001) .................................... 10, 24

Va. Code Ann. § 8.9-403(2)......................................................................... 18

Va. Code Ann. § 8.9A-102(a)(52)(C) ........................................................... 6

Va. Code Ann. § 8.9A-317............................................................................ 11

Va. Code Ann. § 8.9A-515(c) ....................................................................... 12

## **Other Authorities**

G. Ray Warner, <u>Continuing Perfection During Bankruptcy Under Revised</u>

  <u>Article 9</u>, 20-Apr. Am. Bankr. Inst. J. 22 (2001).......................................... 21, 23

## **Rules**

Fed. R. App. P. 4 ........................................................................................... 1

Fed. R. Bankr. P. 8002 .................................................................................. 1

## STATEMENT OF JURISDICTION

The United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, had proper jurisdiction over the voluntary Chapter 11 petition filed by Plaintiff-Appellant Highland Construction Management Services, LP ("Debtor"), pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 151. Debtor's appeal to the United States District Court for the Eastern District of Virginia, Alexandria Division, was timely noted pursuant to Fed. R. Bankr. P. 8002, and jurisdiction in that court was proper pursuant to 28 U.S.C. § 158(a). The District Court's order of February 21, 2014, affirming the Bankruptcy Court's allowance of Defendant-Appellee Wells Fargo Bank N.A. f/b/o Jerome Guyant IRA's (the "Guyant IRA's") claim as a secured claim, was a final order. App. 232-34;[1] 28 U.S.C. § 1291; Catlin v. United States, 324 U.S. 229, 233 (1945). Debtor timely noted an appeal from that final order on March 23, 2014. App. 235-37; Fed. R. App. P. 4(a). Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158(d)(1).

## STATEMENT OF ISSUES

1.    Whether § 9-515 of the Uniform Commercial Code provides that a party who holds a perfected security interest at the time a judgment creditor acquires a

---

[1] Citations to "App." throughout this brief refer to the Joint Appendix filed by Debtor in this appeal.

1

lien in the collateral retains priority over that lean creditor despite the later lapse of the financing statement by which the security interest was perfected, as expressly stated in the Official Comments to the Code and in the cases that have addressed this issue.

2.      Whether the priorities of parties holding lien interests in property of a bankruptcy debtor are frozen at the time the debtor files its petition in bankruptcy.

## STATEMENT OF THE CASE

Beginning on December 22, 2005, the Guyant IRA loaned Debtor over one million dollars.  App. 25-28, 206, 232.  The loan was secured by Debtor's membership interests in three Virginia limited liability companies.  App. 44-46. The Guyant IRA's security interest was perfected by the filing of a financing statement on October 11, 2006, which was amended twice to add additional collateral but was never continued past its original five-year period of effectiveness.  Id.

Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, on February 28, 2011.  In re Highland Construction Management Services, LP, Case No. 11-11413-RGM.  On July 5, 2011, the Guyant IRA filed Proof of Claim 4-1 in Debtor's bankruptcy proceeding, asserting a secured claim in the amount of one million, three hundred ninety-six thousand, six hundred fifty-seven dollars and fifty-two

cents ($1,396,657.52). The amount of that claim is based on a judgment awarded to the Guyant IRA against Debtor in a state court action. App. 25-28.

On October 10, 2011, five years from the date of its filing and months after Debtor's bankruptcy petition, the Guyant IRA's financing statement lapsed. App. 206, 233. Debtor filed an objection to the Guyant IRA's Proof of Claim on October 23, 2012, asserting that the lapse of the Guyant IRA's financing statement caused the Guyant IRA's security interest to be subordinated in priority to Debtor's interest in the collateral. App. 5-28. The Guyant IRA filed a memorandum in opposition to Debtor's objection on December 12, 2012, explaining that the lapse of a financing statement does not cause a security interest to become subordinate in priority to the hypothetical judicial lien held by Debtor under bankruptcy law because Debtor's hypothetical lien arose at the time of Debtor's bankruptcy petition, when the Guyant IRA's security interest was properly perfected. App. 29-38, with exhibits at App. 39-103. Debtor replied to the Guyant IRA's memorandum in opposition on December 17, 2012. App. 104-113. The parties presented oral argument to the Bankruptcy Court on December 18, 2012. Transcript at App. 114-54. Following oral argument, both parties filed supplemental memoranda: Debtor on January 14, 2013 (App. 155-62), and the Guyant IRA on January 15, 2013 (App. 163-73).

The Bankruptcy Court, the Honorable Robert G. Mayer presiding, entered an

order and accompanying memorandum opinion on March 29, 2013, sustaining Debtor's objection and allowing the Guyant IRA's claim as an unsecured claim without priority.  App. 174-84.  The Guyant IRA filed a motion for reconsideration on April 12, 2013 (App. 185-91), which Debtor opposed on May 21, 2013 (App. 192-98), and the Guyant IRA replied on May 26 (App. 199-204).  Upon reconsideration, the Bankruptcy Court entered a new order and memorandum opinion on July 30, 2013, vacating its opinion of May 21, allowing the Guyant IRA's claim as a secured claim, and stating that "under the Uniform Commercial Code, a secured party whose financing statement lapses ... retains his priority as to all lien creditors who obtained a judicial lien prior to the lapse of the financing statement."  App. 205-28.  Debtor noted its appeal from that order to the United States District Court for the Eastern District of Virginia, Alexandria Division, on August 12, 2013.  App. 229-31; Highland Construction Management Services, LP, v. Wells Fargo NA f/b/o Jerome Guyant IRA, Case No. 1:13-cv-1244.

The District Court, the Honorable Claude M. Hilton presiding, affirmed the judgment of the Bankruptcy Court on the basis of the briefs alone, by order entered February 21, 2014.  App. 232-34.  In that order, the District Court analyzed the reasoning of the Bankruptcy Court and held that the Bankruptcy Court's conclusion was "neither clearly erroneous nor contrary to law."  App. 234.  Debtor noted its appeal from that order to this Court on March 23, 2014.  App. 235-36.

4

## STATEMENT OF FACTS

The material facts of the case are not in dispute, and were accurately summarized by both the Bankruptcy Court and the District Court.  App. 205-28; 232-34.  Starting on December 22, 2005, the Guyant IRA loaned Debtor more than one million dollars.  App. 232.  That loan was secured by Highland's membership interests in three Virginia limited liability companies.  Id.  An initial financing statement was filed on October 11, 2006, perfecting the Guyant IRA's security interest.  Id.; see also App. 44.  The Guyant IRA's financing statement was amended on January 18, 2007, and again on February 1, 2010, to add additional collateral as the amount of the loan increased, but the financing statement was not continued beyond its original five-year period of effectiveness.  App. 45-46.

Debtor filed a voluntary petition for Chapter 11 relief in the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, on February 28, 2011.  App. 232.  On July 5, 2011, the Guyant IRA filed Proof of Claim 4-1, in the amount of one million, three hundred and ninety-six thousand, six hundred fifty-seven dollars and fifty-two cents ($1,396,657.52).  Id.  The amount of the Guyant IRA's claim is based on a judgment awarded to the Guyant IRA from Debtor in a previous action in the Circuit Court for Loudoun County, Virginia.  Id. at 232-33; see also App. 25-28.  On October 10, 2011, months after Debtor's bankruptcy petition had been filed, the Guyant IRA's financing statement

5

lapsed.  App. 233.  There are no other liens on the collateral.  Id.

## SUMMARY OF THE ARGUMENT

I.     SECTION 9-515 OF THE UNIFORM COMMERCIAL CODE PROVIDES
       THAT A PARTY WHO HOLDS A PERFECTED SECURITY INTEREST
       AT THE TIME A JUDGMENT CREDITOR ACQUIRES A LIEN IN THE
       COLLATERAL RETAINS PRIORITY OVER THAT LIEN CREDITOR
       DESPITE THE LATER LAPSE OF THE SECURED PARTY'S
       FINANCING STATEMENT.

       Every legal authority that has considered the issue presented by this case

supports the conclusion reached below by the Bankruptcy Court and the District

Court: where a secured party's interest in certain collateral is perfected at the time

when a second creditor obtains a judicial lien on that same collateral, and the

secured party's financing statement later lapses, the secured party's security

interest retains priority over the judicial lien.  Thus the Guyant IRA's security

interest, which was properly perfected by filing at the time when Debtor's

hypothetical judicial lien on the collateral arose,[2] retains priority over Debtor's

hypothetical lien despite the later lapse of the Guyant IRA's financing statement.

This conclusion is based on the plain language of § 9-515(c) of the Uniform

_____

[2] Debtor is a "debtor in possession" because no trustee has been appointed.  11 U.S.C. § 1101(1).
With some exceptions not at issue here, a debtor in possession has the same rights and
obligations as a trustee.  11 U.S.C. § 1107(a).  Among other such rights, a debtor in possession
has "the rights and powers of, or may avoid any ... obligation incurred by the debtor that is
voidable by," a creditor who obtains a judicial lien on the debtor's property as of the date of the
filing of the bankruptcy petition.  11 U.S.C. § 544(a)(1).  Virginia's enactment of Article 9 of the
UCC recognizes a debtor in possession's hypothetical lien.  Va. Code Ann. § 8.9A-102(a)(52)(C)
(1950, as amended) ("'Lien creditor' means: (C) a trustee in bankruptcy from the date of the
filing of the petition.").

Commercial Code (the "UCC"), which states that a security interest perfected by filing a financing statement "is deemed never to have been perfected as against a purchaser of the collateral for value" if that financing statement lapses, but makes no mention of judicial lien creditors.  That conclusion is also directly stated by Official Comment 3 to UCC § 9-515: "The deemed retroactive unperfection ... **does not apply with respect to lien creditors**." (emphasis supplied).  Official Comment 3 even includes an Example that is on all fours with the facts of this case, and reaches the same result as the Bankruptcy Court and the District Court.

The Guyant IRA's position is further supported by legislative intent, principles of statutory construction, and scholarly analysis.  The UCC drafters intended that a security interest that becomes unperfected not be "deemed never to have been perfected" as against a judicial lien creditor.  That intent is apparent because the version of the UCC that preceded the 2001 Amendments, and thus preceded the current § 9-515, did deem an unperfected security interest never to have been perfected as against a judicial lien creditor, and the drafters deliberately removed that provision from the current version of the statute.  Now, a security interest that becomes unperfected as a result of the lapse of a financing statement is retroactively subordinated only as against a purchaser of the collateral for value, and not as to lien creditors.

Under established principles of statutory construction, the final sentence of § 9-515(c)[3] must be given meaning. That meaning is that interest holders other than purchasers of the collateral for value do not move up in priority with respect to a security interest merely because of the lapse of the financing statement, and that meaning is consistent with the other provisions of § 9-515(c). A law journal article written on this precise issue when the 2001 UCC Amendments were enacted reaches the same conclusion as the Bankruptcy Court and the District Court.

Not only do the plain meaning of the statute, the Official Comments, legislative intent, principles of statutory construction, and scholarly commentary support the Guyant IRA's position, but so too does all case law on point. In re Miller Bros. Lumber Co., 2012 Bankr. LEXIS 2031 (Bankr. M.D.N.C. 2012), the single case that appeared to support Debtor's position, and on which the Debtor relied in its briefs to both the Bankruptcy Court and the District Court, has been reversed on appeal. Am. Bank, FSB v. Miller Bros. Lumber Co., Inc. (In re Miller Bros. Lumber Co., Inc.), 2013 U.S. Dist. Lexis 152176 (M.D.N.C. October 23,

---

[3] UCC § 9-515(c) states in full: (c) Lapse and continuation of financing statement. The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (d) [governing the time period in which continuation statements may be filed]. Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise. **If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.**

2013). The district court's opinion in that case, as well as an opinion on this point

of law written by the United States Bankruptcy Court for the Middle District of

Florida earlier this year, both cited the sound reasoning of the Bankruptcy Court in

this case, the District Court's affirmance of which is now before this Court for

review.  Id.; In re Colony Beach and Tennis Club, Inc., 2014 Bankr. Lexis 1106,

*26-27 (Bankr. M.D. Fla. 2014).

II.    THE PRIORITIES OF PARTIES HOLDING LIEN INTERESTS IN
       PROPERTY OF A BANKRUPTCY DEBTOR ARE FROZEN AT THE
       TIME THE DEBTOR FILES ITS PETITION IN BANKRUPTCY.

A completely separate basis upon which this Court could and should uphold

the Bankruptcy Court's allowance of the Guyant IRA's secured claim exists in the

well-known "freeze" rule of bankruptcy law.  Current UCC § 9-515 allows

financing statements to lapse during bankruptcy.  This is a change from the prior

statute, under which any lapse of a financing statement that would occur during

bankruptcy was tolled until six months after the bankruptcy proceedings

concluded.  Under earlier versions of the UCC, before that tolling provision

existed, bankruptcy courts developed the "freeze" rule: the relative priorities of a

bankruptcy debtor and its creditors are determined and "frozen" at the time the

bankruptcy petition is filed.  Any events from that point in time onward, which in a

non-bankruptcy context would cause the various creditors' priorities to be

reevaluated, are of no effect.

Official Comment 4 to current UCC § 9-515 invites the application of the "freeze" rule. That Comment notes that the current UCC § 9-515 removes the earlier statute that tolled lapses of financing statements during bankruptcy, and notes further that the new rule allowing creditors to file UCC-3 continuation statements during bankruptcy "would be of no effect to the extent that federal bankruptcy law dictates a contrary result." The "freeze" rule dictates a contrary result; it has been applied under the 2001 UCC Amendments in at least one instance,[4] and can and should be applied in this case.

The freeze rule is an alternative, independent basis for concluding that the Guyant IRA retains priority in the collateral over Debtor's hypothetical judicial lien. This argument was left unresolved by the Bankruptcy Court, which allowed the Guyant IRA's claim as a secured claim on the basis of UCC § 9-515(c) and therefore found it unnecessary to consider the "freeze rule," and was not addressed by the District Court at all. The "freeze rule" argument presents a separate basis for affirmance that the Court need not endorse or reject if the Court, like the Bankruptcy Court and the District Court, determines that the Guyant IRA's claim should be allowed as a secured claim on the basis of § 9-515(c) alone.

---

[4] In re Wilkinson, 2012 Bankr. Lexis 1539 (Bankr. N.D.N.Y. 2012).

# **ARGUMENT**

## I.    STANDARD OF REVIEW.

"This court reviews pure questions of law *de novo* and pure questions of fact

for clear error." United States v. Han, 74 F.3d 537, 541 (4th Cir. 1996).  Because

the material facts of this case are not in dispute and the only questions before the

Court are pure questions of law under the Uniform Commercial Code and the

Bankruptcy Code, the Court exercises *de novo* review.  Id.

## II.    SECTION 9-515 OF THE UNIFORM COMMERCIAL CODE PROVIDES THAT A PARTY WHO HOLDS A PERFECTED SECURITY INTEREST AT THE TIME A JUDGMENT CREDITOR ACQUIRES A LIEN IN THE COLLATERAL RETAINS PRIORITY OVER THAT LIEN CREDITOR DESPITE THE LATER LAPSE OF THE SECURED PARTY'S FINANCING STATEMENT.

Under the Bankruptcy Code, a bankruptcy trustee or debtor-in-possession

has the status of a hypothetical judicial lien creditor whose lien arises when the

bankruptcy petition is filed.  11 U.S.C. § 544(a)(1).   The general rule is that a

judicial lien creditor holds priority over a secured party only if the judicial lien

arises before the security interest is perfected by filing or some other means.

Va. Code Ann. § 8.9A-317(a)(2)(A) (1950, as amended) (enacting a provision of

the UCC).[5]  Here, because Debtor's hypothetical judicial lien arose while the

Guyant IRA's security interest was properly perfected, the Guyant IRA's security

---

[5] "When determining the substance of property rights and security interests in bankruptcy, the basic federal rule is that state law governs." Wells Fargo Fin. Acceptance v. Price (In re Price), 562 F.3d 618, 624 (4th Cir. 2009) (citing Butner v. United States, 440 U.S. 48 (1979)).

11

interest had priority. In order to defeat the Guyant IRA's priority, Debtor must argue that when the Guyant IRA's financing statement lapsed, nine months after Debtor's bankruptcy petition was filed, the Guyant IRA's security interest retroactively lost its priority to Debtor's hypothetical judicial lien. There is no support for this position.

A.    Under the plain language of UCC § 9-515(c), a security interest that lapses in perfection is retroactively deemed never to have been perfected only as against purchasers of the collateral for value.

The effect of a lapsed financing statement on the perfected status of a security interest is addressed by UCC § 9-515(c), which was added as part of the 2001 UCC amendments and adopted in Virginia as Va. Code Ann. § 8.9A-515(c) (1950 as amended). That section, captioned "Duration and Effectiveness of Financing Statements; Effect of Lapsed Financing Statement," states:

> (c) Lapse and continuation of financing statement. The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (d) [governing the time period in which continuation statements may be filed]. Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise. **If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.**

Va. Code Ann. § 8.9A-515(c) (1950, as amended) (emphasis added).

The second sentence of that section states a broad principle: if a financing

statement lapses and that financing statement was the only way the underlying
security interest was perfected, the security interest becomes unperfected. The
third and final sentence clarifies and limits the second sentence: where the second
sentence applies (that is, where a financing statement is the only method by which
a security interest is perfected, that financing statement lapses, and the security
interest consequently becomes unperfected), the unperfected security interest "**is
deemed never to have been perfected as against a purchaser of the collateral
for value**." Id. (emphasis added).

Debtor's brief to this Court repeats Debtor's argument to the District Court,
which is essentially that any reading of the third sentence of UCC § 9-515(c) that
allows the Guyant IRA's security interest to retain priority over Debtor's
hypothetical judicial lien, despite the lapse of the Guyant IRA's financing
statement, contradicts what Debtor perceives to be the meaning of the second
sentence of UCC § 9-515(c). Debtor's Brief at pp. 6-9. This argument is
fundamentally flawed because it assumes a tension between the second and third
sentences of the statute that simply isn't there. Debtor's misperception that these
two sentences are inconsistent with one another is likely a consequence of Debtor
improperly conflating the effect of perfecting a security interest with the separate
question of whether a security interest exists in the first place. E.g., Debtor's Brief
at 12 ("[the second sentence of UCC § 9-515(c)] can only mean that upon lapse, a

13

UCC filing no longer secures anything."); Debtor's Brief at 14 ("[the second sentence of UCC § 9-515(c)] can only mean that the day after the lapse of a UCC instrument, no lien exists.").

Of course, whether a security interest exists (or has "attached," in UCC terminology), and whether that interest has been "perfected," are distinct concepts that are the subject of two separate subparts of Title 9 of the UCC, one addressing "Attachment" and one addressing "Perfection."[6] See UCC § 9-203(a) (stating that a security agreement attaches "when it becomes enforceable against the debtor"); UCC § 9-308(a) ("a security interest is perfected if it has attached **and** all of the applicable requirements for perfection ... have been satisfied") (emphasis added).[7] This distinction was addressed in In re Colony Beach and Tennis Club, Inc., the most recent of the three cases on point: "[t]here is a seductive appeal to the notion that the lapse of a financing statement and the loss of perfection has the dire

---

[6] Part Two of Title 9 of the UCC is captioned "Effectiveness of Security Agreement; Attachment of Security Interest; Rights of Parties to Security Agreement." Part Three of Title 9 is captioned "Perfection and Priority."

[7] This conflation of whether an interest in collateral is a "security interest" (which means only that the interest was created by a contract in which a debtor granted a creditor an interest in collateral to secure a loan), and whether a security interest is perfected, appears to have been the precise mistake made by the bankruptcy court in Miller Brothers, which was reversed on appeal. In re Miller Bros. Lumber Co., 2012 Bankr. Lexis 2031 (Bankr. M.D.N.C. 2012). The bankruptcy court in that case stated that "parties which fail to file UCC-3 continuation statements will lose their secured status, even when the lapse occurs post-petition." Id. at *6. In reversing that decision, the district court noted that the bankruptcy court had correctly read the first two sentences of UCC § 9-515(c), but had failed to evaluate the priority of an unperfected security interest as against other interests in the same collateral, as the last sentence of § 9-515(c) and the overall priority framework of the UCC require. Am. Bank, FSB v. Miller Bros. Lumber Co., Inc. (In re Miller Bros. Lumber Co., Inc.), 2013 U.S. Dist. Lexis 152176, *13-16 (M.D.N.C. 2013).

consequence of extinguishing the lien ... [n]owhere in the UCC is there a provision stating that upon lapse, the lien is extinguished." <u>In re Colony Beach and Tennis Club, Inc.</u>, 2014 Bankr. Lexis 1106, *22-23 (Bankr. M.D. Fla. 2014).

Proceeding from the mistaken assumption that a security interest that loses perfection ceases to exist at all, Debtor argues that the Bankruptcy Court "eliminate[d] the plain meaning" of the second sentence of UCC § 9-515(c), and further argues that this constituted error because it violated principles of statutory construction. Debtor's Brief at pp. 8-9, 11 (citing <u>Hubbard v. Henrico Ltd. Pshp.</u>, 255 Va. 335, 340 (1998) (rejecting a statutory interpretation that "would violate the settled principle of statutory construction that every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary.")). Ironically, it is the reading of § 9-515(c) adopted by the Bankruptcy Court and the District Court, rather than Debtor's position, that gives "every part of [the] statute ... some effect." <u>Id.</u> The second sentence of § 9-515(c) says that if a security interest is perfected only by a financing statement, and if that financing statement lapses, then the security interest becomes unperfected. The third sentence says that if a security interest becomes unperfected in that manner, then it is deemed never to have been perfected as against a purchaser of the collateral for value, from which it follows that the security interest is **not** "deemed never to have been perfected" as against other types of interests. The conclusion Debtor urges

15

the Court to adopt – that the lapse of a financing statement extinguishes the

security interest that the financing statement formerly perfected – both misstates

fundamental principles of secured transactions and violates the very rule of

statutory construction Debtor itself cites because it fails to give any effect to the

third sentence of UCC § 9-515(c).

> B.    The Official Comments to UCC § 9-515 make clear that a security
> interest that becomes unperfected due to lapse of a financing
> statement is not "deemed never to have been perfected" as against
> judicial lien creditors.

The Official Comments to UCC § 9-515(c) corroborate the plain meaning of

the third sentence of the statute, expressly stating that a security interest that

becomes unperfected due to lapse of a financing statement is "deemed never to

have been perfected" only as against purchasers of the collateral for value.  Official

Comment 3 states:

> 3.  Lapse.  When the period of effectiveness under subsection
> (a) or (b) expires, the effectiveness of the financing statement
> lapses.  The last sentence of subsection (c) addresses the effect
> of the lapse.  The deemed retroactive unperfection applies only
> with respect to purchasers for value; unlike former section 9-
> 403(2) [which preceded § 9-515 and was removed by the 2001
> UCC amendments], **it does not apply with respect to lien
> creditors**.

(emphasis added).

As if this were not clear enough, the drafters of the UCC also provided an

Example that is on all fours with the facts of this case.  Example 2 in Official

Comment 3 states:

> Example 2: SP [Secured Party] holds a security interest perfected by filing.  On July 1, LC [Lien Creditor] acquires a judicial lien on the collateral.  Two weeks later, the effectiveness of the financing statement lapses.  Although the security interest becomes unperfected upon lapse, it was perfected when LC acquired its lien. **Accordingly, notwithstanding the lapse, the perfected security interest has priority over the rights of LC, who is not a purchaser.**

(emphasis supplied).

This Court and courts around the country routinely consider the Official Comments, including the Examples, in interpreting and applying the UCC.  See, e.g., Wells Fargo Fin. Acceptance v. Price (In re Price), 562 F.3d 618, 626 (4th Cir. 2009) ("We treat the UCC's Official Comments as instructive."); Buettner v. R.W. Martin & Sons, 47 F.3d 116, 118 (4th Cir. 1996); Girard Trust Co. v. Strickler (In re Varney Wood Prods., Inc.), 458 F.2d 435, 437 (4th Cir. 1972) ("The Official Comments of the Code are, of course, not binding on this court ... but they do represent powerful dicta.").

C.    Debtor's position that a security interest that becomes unperfected due to lapse of a financing statement is deemed never to have been perfected as against a judicial lien creditor is contrary to clear legislative intent.

Even if the statute is ambiguous, the Guyant IRA must prevail because "[t]he primary objective of statutory construction is to ascertain and give effect to legislative intent." Turner v. Commonwealth, 226 Va. 456, 459 (1983).  See also

17

Tabler v. Board of Supervisors, 221 Va. 200, 202 (1980) ("When legislative intent is plain, our duty is to respect it and give it effect."). The intent of the UCC drafters was that a security interest that becomes unperfected be "deemed never to have been perfected" **only** as against a purchaser of the collateral for value. That legislative intent is obvious not only from the Official Comments discussed above, which explicitly state "The deemed retroactive unperfection ... does not apply with respect to lien creditors" and include an Example illustrating that principle, but is also clearly shown in the legislative history of the statute.

The statute that preceded § 8.9A-515(c) contained language nearly identical to the statute currently in effect, except that the previous language expressly stated that an unperfected security interest was deemed never to have been perfected as against both purchasers for value AND judicial lien creditors. App. 176 (citing Va. Code Ann. § 8.9-403(2)). It is a well-recognized rule of statutory construction that "statutory amendments are presumed purposeful and not unnecessary or in vain." Sussex Community Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, 251 Va. 240, 245 (1996); Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 600-601 (1985) ("[W]e will presume that the legislature acted with full knowledge of the law as it stood bearing on the subject with which it proposed to deal, and we will adopt that construction which gives effect to the legislative purpose.") (internal citations omitted). In other words, a previous version of the

18

UCC specifically provided that a security interest that becomes unperfected due to the lapse of a financing statement was deemed never to have been perfected against lien creditors, and the UCC drafters deliberately removed that provision in the 2001 UCC amendments. To read that deliberately removed provision back into the UCC would be to give the statute the exact opposite effect of what the UCC drafters intended, and violate the cardinal principal of statutory construction.

> D.    The three cases that have considered this point of law uniformly support the Guyant IRA's position.

The plain language of § 9-515(c) is corroborated not only by the Official Comments and Examples to that section, but also by a small but growing body of caselaw. In the oldest of those cases, <u>Mostoller v. CitiCapital Commer. Corp.</u>, the United States Bankruptcy Court for the Eastern District of Tennessee held that "Because trustees are armed with the rights of lien creditors under [11 U.S.C.] § 544(a) and are not purchasers for value, the fact that ... [the secured party's] UCC-1 Financing Statements lapsed during the pendency of the bankruptcy case does not change the priority scheme as between [the trustee and the secured party]." <u>Mostoller v. CitiCapital Commer. Corp. (In re Stetson & Assocs.)</u>, 330 B.R. 613, 623-34 (Bankr. E.D. Tenn. 2005). Then, last year, the United States District Court for the Middle District of North Carolina reached the same conclusion in <u>Am. Bank, FSB v. Miller Bros. Lumber Co., Inc. (In re Miller Bros. Lumber Co., Inc.)</u>, 2013 U.S. Dist. Lexis 152176, *18-20 (M.D.N.C. 2013).

19

Most recently, the United States Bankruptcy Court for the Middle District of Florida reached the same conclusion as the courts in <u>Mostoller</u> and <u>Miller Bros.</u>, writing that "a debtor in possession cannot avoid the lien of a secured creditor whose security interest was perfected on the petition date" because the post-petition lapse of a financing statement means only that the security interest formerly perfected by that financing statement would lose priority to later-perfected interests. <u>In re Colony Beach and Tennis Club, Inc.</u>, 2014 Bankr. Lexis 1106, *26-27 (Bankr. M.D. Fla. 2014). The Guyant IRA is not aware of, and Debtor does not cite, any other cases on point save these three, which uniformly hold that the post-petition lapse of a financing statement does not cause the security interest formerly perfected by that financing statement to be "deemed never to have been perfected" as against a bankruptcy trustee or debtor in possession holding a hypothetical judicial lien that arose while the security interest was perfected.

It is noteworthy that two of these three cases not only agree with the Bankruptcy Court's holding, but actually cite the Bankruptcy Court's opinion. Debtor's argument to the Bankruptcy Court, and the Bankruptcy Court's vacated first opinion, were based on the holding of the United States Bankruptcy Court for the Middle District of North Carolina in <u>Miller Bros.</u>, which was reversed on appeal. <u>In re Miller Bros. Lumber Co.</u>, 2012 Bankr. Lexis 2031 (Bankr. M.D.N.C.

20

2012).  In reversing the bankruptcy court's holding, the district court in <u>Miller</u>

<u>Bros.</u> cited with approval the final decision of the Bankruptcy Court in this case.

<u>Am. Bank, FSB v. Miller Bros. Lumber Co., Inc. (In re Miller Bros. Lumber Co.,</u>

<u>Inc.)</u>, 2013 U.S. Dist. Lexis 152176, *16, *20 (M.D.N.C. 2013) (citing <u>In re</u>

<u>Highland Constr. Mgmt. Servs.</u>, 497 B.R. 829 (Bankr. E.D. Va. 2013).  The

Florida bankruptcy court's decision in <u>Colony Beach</u> also referenced Judge

Mayer's "careful analysis" of this question in reaching its own conclusion.  <u>In re</u>

<u>Colony Beach and Tennis Club, Inc.</u>, 2014 Bankr. Lexis 1106 at *26.   The

uniform caselaw support for the Guyant IRA's position shows that the Bankruptcy

Court reached the correct conclusion.  The fact that the Bankruptcy Court's

opinion has already been relied upon twice by other bankruptcy courts shows that

Judge Mayer's analysis was not just correct, but also thoroughly reasoned.

      E.    Legal commentary analyzing this precise point of law, written at the
             time UCC § 9-515 was drafted, reaches the same conclusion as the
             Bankruptcy Court and the District Court.

Finally, Debtor's construction of the statute is contrary to legal scholarship

analyzing, at the time the 2001 UCC Amendments were being adopted, the exact

point of law at issue in this case.  G. Ray Warner, <u>Continuing Perfection During</u>

<u>Bankruptcy Under Revised Article 9</u>, 20-Apr. Am. Bankr. Inst. J. 22 (2001).

Professor Warner noted that on the basis of the statutory language, the legislative

history, and the Official Comments to UCC § 9-515(c), a bankruptcy trustee or

21

debtor-in-possession, placed by the Bankruptcy Code in the position of a hypothetical judicial lien creditor whose lien arose at the time the bankruptcy petition was filed, would remain subordinate in priority to a security interest in personal property that is properly perfected at the time of the bankruptcy petition, even if that security interest later becomes unperfected by lapse of the financing statement. Id.

Under the language of UCC § 9-515(c), the Guyant IRA's security interest became unperfected when its financing statement lapsed, but is not "deemed never to have been perfected" as against Debtor's interest because Debtor is not a purchaser of the collateral for value. Because the Guyant IRA's security interest was properly perfected on the date Debtor's hypothetical judicial lien arose, and because Debtor is not a purchaser of the collateral for value, the Guyant IRA's security interest retains priority over Debtor's hypothetical lien despite the lapse of the Guyant IRA's financing statement. This conclusion is directly stated by Official Comment 3 to UCC § 9-515, clearly illustrated by Example 2 in that Official Comment, and uniformly supported by the three cases on point. The District Court's affirmance of the Bankruptcy Court's order allowing the full amount of the Guyant IRA's claim as a secured claim should therefore be affirmed.

III.    THE PRIORITIES OF PARTIES HOLDING LIEN INTERESTS IN
        PROPERTY OF A BANKRUPTCY DEBTOR ARE FROZEN AT THE
        TIME THE DEBTOR FILES ITS PETITION IN BANKRUPTCY.

A separate but sufficient basis for affirmance, which this Court need not

reach, may be found in the "entrenched bankruptcy law and policy traditionally

freezing parties' interests at the time of filing." In re Wilkinson, 2012 Bankr.

Lexis 1539 at *11 (Bankr. N.D.N.Y. 2012). Prior to the enactment of the 2001

UCC Amendments, of which the current § 9-515 is part, the previous UCC § 9-403

tolled the lapse of financing statements during the pendency of a debtor's

bankruptcy proceeding. Between 1962, when former UCC § 9-403 was enacted,

and the current UCC § 9-515's removal of that tolling provision in 2001, it was

unnecessary to consider how the "freeze rule" applied to the lapse of a financing

statement during a bankruptcy proceeding; with the tolling provision of former

UCC § 9-403 in place, such a lapse could not occur until after the bankruptcy

proceeding had concluded. Now that UCC § 9-515 has removed the tolling

provision, the pre-1962 "freeze rule" is once again relevant to the possible lapse of

a financing statement during the pendency of a bankruptcy proceeding. G. Ray

Warner, Continuing Perfection During Bankruptcy Under Revised Article 9, 20-

Apr. Am. Bankr. Inst. J. 22 (2001). The Wilkinson court read the last sentence of

23

Official Comment 4 to UCC § 9-515[8] as a "nod to" the freeze rule's modern applicability, and held on that basis that "a creditor's security interest, perfected and valid at the commencement of a bankruptcy proceeding but due to expire during the pendency of the bankruptcy case, does not lapse where the creditor fails to file a post-petition continuation statement."  <u>Wilkinson</u>, 2012 Bankr. Lexis 1539 at *10, *13.

The Bankruptcy Court below considered this argument, but ultimately held only that "[i]t is not necessary in this case to resolve the role of the freeze rule." App. 220.  The District Court did not address the freeze rule at all.  App. 232-34. While the freeze rule creates an independent and adequate basis for the Court to affirm the District Court's order, the Court need not endorse or reject the freeze rule argument if it affirms based on the plain meaning of UCC § 9-515(c).

## **CONCLUSION**

The language of UCC § 9-515(c), the Official Comments to that statute, the clear intent of the UCC drafters, principles of statutory construction, and all three

---

[8] Official Comment 4: Effect of Debtor's Bankruptcy. Under former section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding.  Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled.  Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: To be sure that a financing statement does not lapse during the debtor's bankruptcy.  The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code section 362(b)(3).  **Of course, if the debtor enters bankruptcy before lapse, the provisions of this article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result**. (emphasis added).

24

cases on point uniformly support the holding of the Bankruptcy Court and the

District Court.  Where a financing statement is the only thing perfecting a security

interest and that financing statement lapses, the security interest is "deemed never

to have been perfected" as against a purchaser of the collateral for value, but **not** as

against a lien creditor whose lien arose when the security interest was properly

perfected.  Because Debtor's interest in the collateral, by operation of bankruptcy

law, is a hypothetical judicial lien that arose while the Guyant IRA's security

interest was properly perfected, the post-petition lapse of the Guyant IRA's

financing statement does not affect the priority of interests between the two parties.

The District Court's affirmance of the Bankruptcy Court's allowance of the Guyant

IRA's claim as a secured claim should therefore be affirmed.

Dated:        June 9, 2014              Respectfully submitted,

                                       GOLDMAN & VAN BEEK, P.C.


                                       s/ Neil D. Goldman
                                       Neil D. Goldman, Esq. (VSB No. 18352)
                                       510 King Street, Suite 416
                                       Alexandria, Virginia 22314
                                       Voice:      (703) 684-3260
                                       Facsimile:  (703) 584-4742
                                       ngoldman@goldmanvanbeek.com

## RULE 34(a) STATEMENT WITH RESPECT TO ORAL ARGUMENT

Because this is a clear-cut case in which there is overwhelming and uniform support for the Guyant IRA's position, the Guyant IRA believes that oral argument should not be required.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains six thousand, three hundred and sixty-seven (6,367) words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in fourteen-point Times New Roman.

(s)_____s/ Neil D. Goldman_____

Attorney for: Defendant-Appellee Wells Fargo Bank,
          N.A., f/b/o Jerome Guyant IRA

Dated: June 9, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of June, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all persons who have registered to receive electronic notice, including:

James P. Campbell, Esq.
Campbell Flannery, P.C.
1602 Village Market Boulevard, Suite 220
Leesburg, VA 20175

s/ Neil D. Goldman